Mary and Eric WOODSON, Plaintiffs,

v.

THE CITY OF PHILADELPHIA,
et al., Defendants.

No. CIV. A. 98–6247.

United States District Court,
E.D. Pennsylvania.

June 26, 1999.

Carlos A. Martir, Philadelphia, PA, for Plaintiffs.

Edward D. Chew, Jr., City of Philadelphia Law Dept., Andrew M. Rosen, School District of Philadelphia, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiffs Eric and Mary Woodson bring various causes of action stemming from an alleged assault of Eric Woodson. Three of the defendants, the School District of Philadelphia [1], Anna McGuire, and Angela Lee, now move for summary judgment.

*Background*

For purposes of this motion, the court accepts the plaintiffs' factual allegations as true. According to the plaintiffs, on June 3, 1998, Eric had left John Bartram High

---

1. Although plaintiffs' response to the motion for summary judgment repeatedly refers to this defendant as the "School Board," all other submissions, including the complaint, state "School District."

School for the day[2] when he and a friend, Kilyon Keyes, were stopped by two Philadelphia police officers for truancy. Eric and Kilyon were ordered into the police car, and, after they complied, they were returned to the school. After entering the school, the officers ordered Eric into an empty room. Eric did not enter the room as promptly as the police officer wished and may have challenged the officer verbally. In response, one of the officers lifted him off the ground by his clothing and then threw him across the tiled, cement floor. Eric's face and jaw were severely injured as a result. After some time had passed, one of the officers took Eric to the school nurse, Angela Lee. According to the plaintiffs, Lee failed to assist Eric or seek other medical attention for him. Eric was taken to the principal's office, and his mother was contacted. He eventually underwent extensive treatment for injuries.

*Discussion*[3]

■ To state a claim under 42 U.S.C. § 1983, plaintiff must allege that defendants who acted under the color state law deprived him of a right secured by the United States Constitution or federal law. Accordingly, section 1983 does not create any rights but rather provides a remedy for violation of rights secured elsewhere. *See, e.g., Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906–07 (3d Cir.1997). The court will consider the claims made against each of the moving defendants in turn.

*The School District*

Count five, the only count naming the School District, alleges that the District violated 42 U.S.C. § 1983 by having a "policy and/or custom … to inadequately train principals, school nurses, supervis[ors], teachers, and others in its employ, including the principal and school nurse herein, and to protect and safeguard the students in its care and control." Compl. ¶ 49. Count five continues to say that the School District had a policy of inadequately supervising and training school personnel, including Lee and McGuire, and "thereby failing to adequately discourage further constitutional violations on the part of its … school personnel."[4] Compl. ¶ 50. Finally, this count states that the District failed "to require appropriate in-service training or re-training of its personnel who were known to have failed in protecting the health, safety, and welfare of the students in the Philadelphia School System." Compl. ¶ 51. The School District now seeks summary judgment on this count.

■ Section 1983 does not permit *respondeat superior* liability. *See, e.g.,*

---

2. School had not actually released for the day. However, the Woodsons explain that there was at least a tacit acceptance by the school of the early departure because it was during final exams and there was a transit strike in the city of Philadelphia that kept many students and teachers away from school.

3. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment

motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

4. Count five also names the City of Philadelphia, the Philadelphia Police Department, and Commissioner Timoney.

*Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A public entity may not be held liable under section 1983 unless "the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." *Reitz v. County of Bucks,* 125 F.3d 139, 144 (3d Cir.1997), *citing Monell v. New York Dep't of Soc. Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the absence of an affirmative policy or custom, a failure to train can serve as the basis of section 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the municipal employees come into contact." *Reitz,* 125 F.3d at 145, *quoting Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (internal citations, punctuation omitted). A cognizable failure to train claim must reflect a "deliberate or conscious choice" by an entity. *Canton,* 489 U.S. at 388, 109 S.Ct. 1197.

■ Plaintiffs allege no affirmative policy or custom. The only policies of record in this case are that the School District had a policy of treating injured students when possible, *see* Def. Ex. I at 7–8 (deposition of Lee), and that the District also had a policy of investigating "serious incidents" in which students were involved. *See, e.g.,* Plf. Ex. D at 28–29 (security officer stating that policy requires filing of report); Plf. Ex. E at 19–22 (principal stating that policy is to file reports and conduct investigation as deemed appropriate in such situations).

■ With respect to the failure to train, the Third Circuit has noted that "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult," *Reitz,* 125 F.3d at 145, and plaintiffs have simply failed to meet their burden. "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the

absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation occurred." *Reitz,* 125 F.3d at 145. Moreover, plaintiffs must also demonstrate that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan,* 520 U.S. at 404, 117 S.Ct. 1382.

■ In this case, the plaintiffs have presented no evidence whatsoever to suggest that the School District engaged in a deliberately indifferent policy of failing to train its employees to assist injured students. Even assuming, for the moment, that the actions of the individual defendants were in violation of section 1983, there is no indication that the School District's failure to train was related to those actions. There is no evidence that "similar conduct ha[d] occurred in the past or that the inactivity or activity occurred specifically because of insufficient training[.]" *Reitz,* 125 F.3d at 145. Moreover, plaintiffs may not show deliberate indifference by pointing to the shortcomings of an individual principal or nurse; nor may they meet their burden by showing, without more, "that better training would have enabled a staff member to avoid the injury-causing conduct." *Hedges v. Musco,* 33 F.Supp.2d 369, 382 (D.N.J.1999). Plaintiffs also fail to clarify what training might have alleviated the problems alleged.

Nor is there any evidence of record that would permit a finding that the School District should be liable for its custom or policy of failing to train the police officers in this case. Initially, and most importantly, the only evidence of record states that the police officers were not employed by the School District and were not attached to any particular school. *See* Def. Ex. M at 6–7, 12–15 (deposition of Officer Lopez stating that his duties pertaining to truants are established by the police department and that he has little or no contact with the school); Def. Ex. N at 6–7, 46–47 (deposition of Officer Pigford noting

same); Plf. Ex. E at 17, 18, 33–34 (McGuire testimony noting that officers are not school personnel); Def. Ex. K (police department policy pertaining to truants). Even if the court were inclined to find that the officers' close relationship with Bartram High School could create an obligation on the part of the School District to train those officers, plaintiffs have not met their burden of showing deliberate indifference as described above. There is no evidence that the School District was aware of any prior incidents with these officers or other officers such that it should have been on notice of potential problems that it could have redressed through training programs. *See, e.g.,* Plf. Ex. D at 28–29, 32 (testimony of school security officer stating that he was unaware of any other incidents between students and police officers).

While the plaintiffs' response to the motion for summary judgment suggests that there was some sort of conspiracy between the school defendants and the police officers in question, there is no evidence or argument presented that would enable the court to find that there was a School District policy that encouraged such behavior or a lack of training that could lead to such behavior. Again, the only possible basis for School District liability would be *respondeat superior* liability. However, even if plaintiffs could show that McGuire and Lee engaged in some sort of cover up of a violation of Eric's rights, there is nothing that connects such actions to the School District. As noted above, it appears to be School policy to encourage investigation of serious incidents. Even if individuals did fail to comply with this policy, plaintiffs offer no basis by which the School District could be held liable for such improper actions.

In short, there is no evidence of an affirmative custom or policy that would encourage either the mistreatment of students by police arresting truants or a refusal to provide needed medical care. Nor is there any evidence of any lack of train-ing sufficient to demonstrate deliberate indifference. Consequently, the School District's motion for summary judgment must be granted.

### McGuire and Lee

Count six brings a section 1983 claim against McGuire and Lee, stating that "[b]y their conduct in failing to obtain medical care for minor Eric Woodson, jointly and individually and under color of law, deprive[d] Eric Woodson of his constitutional right to equal treatment under the Constitution and laws of the United States and the Commonwealth of Pennsylvania." Compl. ¶ 56.

■ The claims against McGuire cannot proceed. Initially, there is no allegation whatsoever that McGuire played any role in the alleged assault, and the only evidence of record suggests that she never even saw Eric on the day of the incident. The complaint itself states only that Eric was taken to McGuire's office, not that he saw her. *See* Compl. ¶ 22. Eric's later deposition testimony and responses to interrogatories explicitly state that he never saw the principal at any time on the day he was injured. *See* Def. Ex. E at 50–51 ("Q.: Never saw the principal on the day of this incident, did you? A.: No."); Def. Ex. G at 58–60 ("Q.: "When you went from the room where the incident occurred down to the nurse's office, did you talk with any school administrator or principal or vice principal? A.: No."); Def. Ex. H (interrogatory question thirteen and response stating that Eric did not see McGuire on day of incident). Consequently, the only basis by which McGuire could be liable for a section 1983 violation for failure to provide needed medical care appears to be a *respondeat superior* theory. As described above, plaintiffs have provided no evidence from which the court could conclude that any policy, custom, or specific lack of training existed from which liability could be imposed.

■ Plaintiffs also advance the claim that McGuire is liable under section 1983

for conspiring with the police officers to cover up the extent and nature of Eric's injuries. In support of this theory, plaintiffs rely on school security officer Charles Boller's testimony that he provided McGuire with a report describing the incident. *See* Plf. Ex. D at 27. In contrast, McGuire's own testimony states that she was unaware of any incident until she was informed of the present litigation in October. *See* Plf. Ex. E at 17–22, 25–38. From this, plaintiffs argue that there is a genuine issue of material fact as to whether the principal engaged in a conspiracy with the officers in violation of section 1983 by failing to investigate the claim as she testified would be ordinary policy.

The court initially notes that in the response to the motion for summary judgment, plaintiffs appear to be asserting a new conspiracy theory pursuant to 42 U.S.C. § 1985 in addition to a straightforward section 1983 claim. Regardless of the theory, plaintiffs have not presented evidence that creates a genuine issue of material fact that McGuire was engaged in some conspiracy that violated Eric's federal rights. Even accepting the plaintiffs' interpretation of the events as true—that Boller gave the principal the report and that she deliberately failed to investigate— these incidents reveal, at worst, negligence; there is simply no evidence from which any fact-finder could find that McGuire was engaged in a conspiracy. Moreover, plaintiffs' interpretation must be qualified, as Boller agrees that he did not speak with the principal on the day in question. He states rather that he asked another individual, Lucy, whose testimony is not before the court, to inform the principal of the incident, *see id.* at 26–29; at some later time, presumably, Boller filed his report with the principal. The report itself is not included in the motion for summary judgment or the response thereto, and the only basis by which the court can surmise its contents is though Boller's own testimony; this testimony provides no basis from which a conspiracy may be inferred.[5]

■ Lee's motion will likewise be granted. Assuming for the moment that actions by a school nurse who failed to provide any medical care could create a section 1983 claim, as described previously, plaintiffs could not recover from Lee without showing that she acted with deliberate indifference to the rights of the injured party; mere negligence will not suffice. The only evidence of record indicates that Eric received the care from Lee that she was able to give. Eric's own statements and deposition testimony indicate that Lee, at the very least, examined his mouth visually and then called his relatives and told them that he needed to be taken to the hospital. *See* Def. Ex. C at 2 (Eric's statement that nurse contacted his aunt who contacted his mother)[6]; Def. Ex. F at 53–54 (Eric's deposition stating that Lee looked at his mouth and said she did not think she could help him and that he should see a dentist); *id.* at 56 (stating that Lee contacted his mother). Lee herself gave testimony that she only has resources for treatment of minor injuries and that if she cannot treat the injuries, she must contact some outside party such as the fire department for assistance. *See* Def. Ex. I at 8 (deposition of Lee). She also stated that she had Eric rinse his mouth out, visually inspected his mouth, gave him a cold compress, and called the emergency contact, his mother, and the dentist. *See* Def. Ex. J at 21 (deposition of Lee). Even accepting Eric's account that he cannot remember whether she called the dentist or the emergency contact, Lee's actions cannot be said to rise to the level of deliberate indifference. This is particularly true given that plaintiffs do

---

5. Defendants did include a report in their motion for summary judgment, but it was written on July 3, 1998, and was compiled by Bill Johnson of Icom Services.

6. Eric also stated in this testimony that the nurse gave him medicine, but, in a later deposition, said that he did not believe that statement was accurate. *See* Def. Ex. G at 59.

not allege that Lee should have been able to provide more or better treatment to Eric.

Plaintiffs also assert that Lee was engaged in the conspiracy with the police officers: they state that she must have known that Eric's injuries were serious and that she deliberately underplayed their extent in an attempt to corroborate the police officers' stories. However, plaintiffs' own evidence indicates that Lee contacted outside help because she was unable to provide Eric with the assistance she needed. The claim that Lee was engaged in a conspiracy is supported by no evidence whatsoever.

*State Law Claims*

The plaintiffs appear to assert state law claims against these defendants. However, as there is no basis for federal jurisdiction over these three defendants, the court declines to exercise supplemental jurisdiction. Any state law claims will be dismissed without prejudice. Consequently, the court does not rule on defendants' claims regarding immunity under state law for state causes of actions.

*Conclusion*

The School District's motion for summary judgment must be granted because plaintiffs have provided no evidence of any affirmative policy or of any lack of training that would reveal deliberate indifference. Similarly, McGuire must be dismissed because there is no allegation that she was even present the day of the event and neither is there any evidence from which *respondeat superior* liability could be imposed. Finally, Lee's motion must be granted because her actions cannot be found to display deliberate indifference.

An appropriate Order follows.

### ORDER

**AND NOW**, this 26th day of June, 1999, upon consideration of the Motion for Summary Judgment submitted by Defendants School District of Philadelphia, Anna McGuire, and Angela Lee, and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. Defendants McGuire, Lee, and the School District of Philadelphia are dismissed from this action. This disposition has no effect on plaintiffs' claims against the other defendants.